1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                        NORTHERN DISTRICT OF CALIFORNIA

9

10    KATHERINE IKEDA,                              Case No. 20-cv-08071-TSH

11                      Plaintiff,

12           v.                                     **ORDER GRANTING IN PART AND
                                                    DENYING IN PART MOTION TO
13    SAN FRANCISCO FIREMEN CREDIT                  DISMISS**
      UNION, et al.,
14                                                  Re: Dkt. No. 25
                      Defendants.
15

16                              **I.    INTRODUCTION**

17           Plaintiff Katherine Ikeda brings this action against her lender, Defendant San Francisco

18    Fireman Credit Union dba San Francisco Fire CU ("SFFCU"), and loan servicer, Defendant

19    Cenlar FSB, related to a $1,8 million dollar loan used to finance the purchase of property in San

20    Francisco.  Pending before the Court is Defendants' motion to dismiss pursuant to Federal Rules

21    of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7).  ECF No. 25.  Ikeda filed an Opposition (ECF

22    No. 27) and Defendant filed a Reply (ECF No. 28).  The Court finds this matter suitable for

23    disposition without oral argument and **VACATES** the October 14, 2021 hearing.  *See* Civ. L.R. 7-

24    1(b).  Having considered the parties' positions, relevant legal authority, and the record in this case,

25    the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for the following

26    reasons.[1]

27    _____

28    [1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF
      Nos. 7, 16.

United States District Court
Northern District of California

## II.    BACKGROUND

### A.    Property Purchase and Servicing Issues

In April 2016 Ikeda and co-borrower Margueritta[2] Mouawad purchased the property at 1622 McAllister Street, San Francisco for $2.4 million.  First Am. Compl. ("FAC") ¶ 11, ECF No. 19; Defs.' Request for Judicial Notice ("RJN"), Ex. 1.[3]  Ikeda and Mouawad partially financed the purchase with a loan of $1.8 million from SFFCU, which was secured by a deed of trust against the property on April 2, 2016.  FAC ¶¶ 11-12; RJN, Ex. 2.  At some point after origination, SFFCU engaged Cenlar to service the loan.  FAC ¶ 13.  Ikeda never received notification of Cenlar's engagement; instead, "SFFCU and Cenlar perpetuated the deliberate, knowing fiction that the Loan was still being serviced by SFFCU."  *Id.*

For the next two and a half years, there were no problems.  Then, in December 2018, the monthly loan statements issued by Cenlar (which still bore SFFCU's name and logo) began showing allegedly past due amounts and a higher monthly payment.  *Id.* ¶ 14.  Ikeda repeatedly called SFFCU seeking an explanation but, unbeknownst to her, these calls were routed to Cenlar.  *Id.* ¶ 15.  The agents with whom she spoke told her that "(a) the representative could not answer her questions because only the designated 'single point of contact' was authorized to answer questions concerning the Loan, or (b) the interest rate on the Loan had adjusted, leading to an increase in the monthly loan payment."  *Id.* ¶ 16.  Ikeda was never able to reach or speak with her single point of contact despite leaving several voicemail messages with the designated contact.  *Id.* ¶ 17.  Ikeda later learned that SFFCU and/or Cenlar had established an escrow account to hold amounts allegedly due for property taxes and/or insurance, and was including a monthly escrow charge, effectively doubling the monthly loan payment.  *Id.* ¶ 18.

On multiple occasions between December 2018 and August 2019, Ikeda or her attorney requested that SFFCU specify the sum necessary to bring the loan current.  *Id.* ¶ 19.  On multiple

---

[2] Although Ms. Mouawad's name is spelled "Margaritta" in Ikeda's complaint, the Deed of Trust identifies her as "Margueritta" (Defs.' Request for Judicial Notice, Ex 2, ECF No. 25-1) and Ikeda refers to her as Margueritta in her opposition.
[3] As discussed below, the Court takes judicial notice of the documents in Defendants' request for judicial notice.

United States District Court
Northern District of California

occasions, she paid the precise sum identified by SFFCU and/or Cenlar, only to have the payment: (a) rejected as an insufficient "partial payment," resulting in imposition of additional late fees, and interest, or (b) accepted, without ever resolving the alleged delinquency, resulting in assessment of yet further late fees and interest. *Id.*

In the process of reviewing her loan statements and other materials, Ikeda identified numerous additional issues of concern. *Id.* ¶ 20. For example, it appeared that Defendants had purchased "force placed" insurance for the property, but this made no sense to Ikeda, as she believed she had maintained the required insurance on the property. *Id.* Ikeda also discovered that Defendants "were making derogatory reports to the credit bureaus, which she believed to be improper, given that her inability to bring the Loan current had been caused by Defendants' misinformation and misapplication of payments." *Id.*

**B.    Qualified Written Requests**

Ikeda outlines and attaches to two Qualified Written Requests ("QWR") requesting information concerning the loan and that Defendants correct their servicing errors. *Id.* ¶¶ 21-30.

On October 16, 2019, Ikeda sent Defendants QWR #1, requesting five specific categories of information, four of which specifically related to Defendants' calculation of amounts claimed to be due on the loan, with the fifth relating to their reporting of Ikeda as delinquent to the credit bureaus. *Id.* ¶¶21-22 & Ex. A. Neither SFFCU nor Cenlar timely responded. *Id.* ¶ 23. Rather, in late January 2020 (after the statutory period for a response had expired), Cenlar forwarded an undated letter to Ikeda, acknowledging it had reported her as delinquent to consumer credit agencies after receiving QWR #1. *Id.* ¶¶ 24-25. Cenlar's response concluded that "no servicing errors occurred." *Id.* ¶ 26. This conclusion is contradicted by Cenlar's own internal records, which describe Cenlar's misapplication of loan payments as "PROCESSER ERROR." *Id.* One such misapplied payment in the amount of $15,440.33, initially made by Ikeda in July 2019, was retained by Cenlar even after the loan had been fully paid off in December 2019 and was not refunded to Ikeda until June 2020. *Id.* After QWR#1 had been sent, Ikeda continued to experience ongoing loan servicing errors, including the rejection of a $20,917.00 payment that had been made based on SFFCU's express representation as to the amount required to bring the loan

United States District Court
Northern District of California

United States District Court
Northern District of California

current.  *Id.* ¶ 27.  Ikeda had also observed that SFFCU and/or Cenlar were continuing to report her as delinquent to credit bureaus.  *Id.*

On November 13, 2019. Ikeda sent Defendants a second QWR, requesting six categories of information, five of which related to Defendants' calculation of the amounts due on the loan, with the sixth bearing on their reporting of Ikeda as delinquent to the credit bureaus.  *Id.* ¶¶ 28-29 & Ex. B.  Neither SFFCU nor Cenlar timely responded to QWR #2.  Rather, after the statutory period for a response had expired, Cenlar sent Ikeda a letter dated January 10, 2020, acknowledging that it had continued to report her as delinquent.  *Id.* ¶ 30.

**C.    Sale of Property and Payoff Demand**

On November 14, 2019, Ikeda entered into an agreement to sell the property and requested a Payoff Demand Statement.  *Id.* ¶ 31.  The demand she received, dated December 11, 2019, stated a payoff of $1,789,733.79, which failed to account for over $95,000 in payments.  *Id.* ¶ 32.  Ikeda requested that SFFCU promptly correct the demand, noting that escrow was scheduled to close on December 17, 2019.  *Id.* ¶ 33.  SFFCU did not respond.  *Id.*  Four days later, on December 17, 2019, Ikeda paid the full amount in protest.  *Id.* ¶ 34.

**D.    Superior Court Action**

In November 2016 Ikeda filed suit against co-borrower Mouawad in San Francisco Superior Court alleging (among other things) that Mouawad had breached their agreement, ousted her from the property, and unlawfully taken possession of her personal property.  Defs.' RJN, Exs. 4 & 7.  On the first day of trial (August 12, 2019), Ikeda and Mouawad entered into a written settlement agreement.  *Id.*, Ex. 7.  However, a dispute subsequently arose, and on June 4, 2021, Ikeda filed a motion to enforce the parties' settlement.  *Id.*, Ex. 8.  On August 12, 2021, the court denied Ikeda's motion.  Pl.'s RJN, Ex. A, ECF No. 27-1.

**E.    Procedural History**

On November 16, 2020, Ikeda filed her original complaint in this Court, alleging claims for (1) Violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.; (2) Violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"); (3) Money Had and Received; (4) Negligence; (5) Unfair Business Practices, Cal. Bus. & Prof. Code § 17200

1   ("UCL"); and (6) Violation of Consumer Credit Reporting Agencies Act, Cal. Civ. Code §

2   1785.25 ("CCRAA").  ECF No. 1.  After Defendants moved to dismiss (ECF No. 17), Ikeda filed

3   the operative First Amended Complaint on June 11, 2021, alleging the same claims, with the

4   exception of Money Had and Received, which had been alleged against both Defendants and is

5   now only alleged against SFFCU.

6          Defendants filed the present motion on August 30, 2021, seeking dismissal pursuant to

7   Rule 12(b)(6) on the basis that the FAC fails to state a claim upon which relief can be granted,

8   pursuant to Rule 12(b)(1) on the basis that Ikeda fails to demonstrate injury in fact, and pursuant

9   to Rule 12(b)(7) on the basis that Ikeda fails to name co-borrower Mouwad as an indispensable

10  party.

### III.   REQUEST FOR JUDICIAL NOTICE

12         As part of their motion, Defendants request the Court take judicial notice of the following

13  documents:

> Exhibit 1 – Grant Deed, recorded in the official records of San Francisco County on April 7, 2016, as document number 2016-K227607-00.
>
> Exhibit 2 – Deed of Trust, recorded in the official records of San Francisco County on April 7, 2016, as document number 2016-K227608-00.
>
> Exhibit 3 – Grant Deed, recorded in the official records of San Francisco County on December 17, 2019, as document number 2019-K877938-00.
>
> Exhibit 4 – Complaint filed on November 7, 2016, in the Superior Court of the County of San Francisco styled Katherine Ikeda v. Margueritta Mouwad (Case No. CGC-16-555227) ("Superior Court Action").
>
> Exhibit 5 – Response to Order to Show Cause filed in the Superior Court Action on June 25, 2020.
>
> Exhibit 6 – Declaration of Counsel in Response to Order to Show Cause filed in the Superior Court Action on June 25, 2020.
>
> Exhibit 7 – Memorandum of Points and Authorities in Support of Motion to Enforce Settlement Agreement dated June 4, 2021.
>
> Exhibit 8 – Memorandum of Points and Authorities in Opposition to Motion to Enforce Settlement Agreement dated July 7, 2021.

28  ECF No. 25-1.

United States District Court
Northern District of California

5

1   Ikeda requests the Court take judicial notice of a screenshot of San Francisco Superior

2   Court Online Docket for Case No. CGC16555227, *Ikeda v. Mouawad*, reflecting August 12, 2012

3   minute entry that "Plaintiff Katherine Ikeda's Notice of Motion and Motion for an Order

4   Enforcing Settlement Pursuant to Code of Civil Procedure 664.6 is Denied."  ECF No. 27-1.

5   The Court may take judicial notice of matters that are either (1) generally known within the

6   trial court's territorial jurisdiction or (2) capable of accurate and ready determination by resort to

7   sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

8   A court may "take judicial notice of undisputed matters of public record, including

9   documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th

10  Cir. 2012) (internal citation omitted).  Accordingly, the Court grants Defendants' request to take

11  judicial notice of exhibits 4 through 8 and Ikeda's request to take judicial notice of the superior

12  court's minute entry.  The requests for judicial notice of the state court proceedings are granted as

13  to their existence but not as to the truth of their contents.  *See Lee v. City of L.A.*, 250 F.3d 668,

14  690 (9th Cir. 2001).

15  The Court also takes judicial notice of the grant deeds and deed of trust, as courts routinely

16  take judicial notice of such documents as matters of public record.  *See, e.g., Powell v. Wells*

17  *Fargo Home Mortg.*, 2019 WL 2288112, at *1 (N.D. Cal. May 29, 2019), *aff'd*, 855 F. App'x 382

18  (9th Cir. 2021) (taking judicial notice of deeds of trust and grant deeds as public records that "can

19  be accuracy and readily determined from sources whose accuracy cannot reasonably be

20  questioned."); *Gamboa v. Tr. Corps*, 2009 WL 656285, at *3 (N.D. Cal. Mar. 12, 2009) (taking

21  judicial notice of recorded documents, including grant deed and deed of trust, as they were "part of

22  the public record and are easily verifiable."); *Villanueva v. Wells Fargo Bank, N.A.*, 2019 WL

23  1509183, at *3 (N.D. Cal. Apr. 5, 2019), *appeal dismissed*, 2019 WL 6490216 (9th Cir. Oct. 21,

24  2019) ("The Court takes judicial notice of the deed of trust and grant deed because they are true

25  and correct copies of official public records, whose authenticity is capable of accurate and ready

26  determination by resort to sources whose accuracy cannot reasonably be questioned.").

27

28

# IV.   DISCUSSION

## A.   Failure to Join Mouawad

Defendants first seek dismissal pursuant to Rule 12(b)(7) for failure to join Mouawad as a necessary and indispensable party under Rule 19.  In the alternative, they request Ikeda be required to join Mouawad to the present action.  Mot. at 12.

### 1.   Legal Standard

Rule 12(b)(7) permits a party to raise the defense of "failure to join a party under Rule 19." If an absent party is necessary and can be joined, "the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).  A Rule 19 motion poses "three successive inquiries." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005).  "First, the court must determine whether a nonparty should be joined under Rule 19(a)." *Id.*  If an absentee meets the requirements of Rule 19(a), "the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id.*  "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee" or whether the action must be dismissed. *Id.*  "A nonparty in whose absence an action must be dismissed is one who 'not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience.'" *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1854) (alterations in original).

"The moving party has the burden of persuasion in arguing for dismissal" for failure to join. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).  When considering a motion to dismiss under Rule 12(b)(7), the court accepts as true the allegations in the plaintiff's complaint and draws all reasonable inferences in the plaintiff's favor. *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011). However, the court may also consider evidence outside of the pleadings. *McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960).

### 2.    Analysis

#### a.    Whether Mouawad is a Necessary Party

A person is required to be joined if feasible under Rule 19(a)(1)(A) if, "in that person's absence, the court cannot accord complete relief among the existing parties" or under Rule 19(a)(1)(B) if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." "There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a) . . . .  The determination is heavily influenced by the facts and circumstances of each case." *Peabody W. Coal Co.*, 610 F.3d at 1078 (quoting *N. Alaska Env't Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986).

As to the requirements under Rule 19(a)(1)(A), the "complete relief" element is "concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action."  *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983).  "This portion of the rule is concerned only with relief as between the persons already parties, not as between a party and the absent person whose joinder is sought." *Eldredge v. Carpenters 46 N. California Ctys. Joint Apprenticeship & Training Comm.*, 662 F.2d 534, 537 (9th Cir. 1981) (internal quotation omitted).  As such, courts ask whether the nonparty's absence "would preclude the district court from fashioning meaningful relief as between the parties." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004); *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1068 (N.D. Cal. 2005) ("The effect a decision may have on the absent party is not material." (internal quotation marks and citation omitted)).  Here, Defendants do not directly contend that Mouawad's absence would preclude the Court from being able to fashion meaningful relief as between them and Ikeda, and the Court discerns no reason for so concluding.  As such, Mouawad is not a necessary party under Rule 19(a)(1)(A).

Instead, Defendants' argument is founded upon Rule 19(a)(1)(B).  They argue the Court

cannot grant complete relief in Mouawad's absence because the crux of the complaint is the overpayment of the amount due under the loan, and the property was owned by both Mouawad and Ikeda.  Mot. at 11.  Defendants argue that whatever the Court's final disposition of this matter, it will likely affect Mouawad to the same extent it affects Ikeda, and they are entitled to have clarity as to whom the obligation is due.  *Id.*  Defendants also argue Mouawad's interests may not be adequately protected because the outcome of this case will likely affect her rights in relation to the loan and funds paid thereto.  *Id.*  If Mouawad is not joined as a party, she would be unable to assert any claims and/or defenses that may affect the Court's final judgment.  *Id.* at 11-12. Defendants also argue they cannot obtain any counter-relief in this case and could face multiple and conflicting rulings if Mouawad comes to court asserting her claims at a later date.  *Id.* at 12.

The Court notes that subparts (i) and (ii) of Rule 19(a)(1)(B) "are contingent . . . upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action."  *Northrop Corp.*, 705 F.2d at 1043 (citing *Cent. Council of Tlingit & Haida Indians of Alaska v. Chugach Native Ass'n*, 502 F.2d 1323, 1326 (9th Cir. 1974)).  Thus, for Mouawad to be a necessary party under Rule 19(a)(1)(B), she must claim an interest in the subject matter of Ikeda's claims.  *St. Paul Fire & Marine Ins. Co. v. Ins. Co. of the State of Pennsylvania*, 2016 WL 1191808, at *8 (N.D. Cal. Mar. 28, 2016).  The Ninth Circuit has held that the interest must be a "legally protected" interest to qualify as a necessary party under Rule 19.  *Ward v. Apple Inc.*, 791 F.3d 1041, 1051 (9th Cir. 2015).

Ikeda disputes that Mouawad has a legally protected interest because their settlement agreement constitutes a separate agreement between them, under which the funds Ikeda paid Defendants in order to close the sale of the property would have been paid out directly to her. FAC ¶ 36.  Thus, Ikeda contends Mouawad has never had any direct claim against Defendants for recovery of any portion of those funds.  Opp'n at 7.  However, Mouawad has made no appearance in this case, and although the Court has taken judicial notice of the state court proceedings, it did not do so as to the truth of their contents.  *See Lee*, 250 F.3d at 690.  Still, in the record before it, the Court finds no indication that Mouawad has claimed an interest in the subject matter of Ikeda's claims.  "Where a party is aware of an action and chooses not to claim an interest, the district court

1   does not err by holding that joinder was 'unnecessary.'"  *Altmann v. Republic of Austria*, 317 F.3d

2   954, 971 (9th Cir. 2002).  On the other hand, "where there is no evidence that the absent party is

3   aware of an action, the Court may conclude that the absent party is necessary under Rule 19

4   without the absent party taking affirmative steps to indicate a desire to participate in the lawsuit."

5   *St. Paul Fire & Marine Ins. Co.*, 2016 WL 1191808, at *9 (citation omitted).  Therefore, although

6   Defendants have not put forth any evidence that Mouawad is aware of Ikeda's claims in this case,

7   her failure to assert an interest does not prevent the Court from concluding that she is a necessary

8   party under Rule 19.  *Id.* (citing *Altmann*, 317 F.3d at 971).

9          Accordingly, because it is possible that Mouawad has an interest in Ikeda's claims, the

10  Court proceeds to the next step to determine whether she is a necessary party under Rule

11  19(a)(1)(B), which requires the Court to determine if her absence from the litigation would either

12  (i) impair or impede her ability to protect her interest or (ii) leave Defendants and/or Ikeda

13  "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations

14  because of [her] interest."  As to the first prong, if Mouawad is not joined as a party to the instant

15  action, she would not be bound by this Court's judgment.  *See Taylor v. Sturgell*, 553 U.S. 880,

16  893 (2008) ("[W]e have often repeated the general rule that 'one is not bound by a judgment in

17  personam in a litigation in which he is not designated as a party or to which he has not been made

18  a party by service of process.'") (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)).  Because she

19  would not be bound by a judgment in this case, the Court finds the outcome would not impair or

20  impede her ability to protect her interest.

21         As to the second prong, while it is possible that Mouawad could bring a subsequent lawsuit

22  against Defendants related to the loan, "subsequent litigation that results in different liabilities

23  does not necessitate compulsory joinder."  *Bird v. Keefe Kaplan Mar., Inc.*, 2015 WL 1009015, at

24  *4 (N.D. Cal. Mar. 5, 2015) (citing *United Kingdom Mut. Steamship Assurance Ass'n (Bermuda)*,

25  *Ltd. v. Cont'l Maritime of San Francisco, Inc.*, 1991 WL 354881 at *3 (N.D. Cal. Nov. 19, 1991)

26  ("A possibility of multiple litigation with inconsistent results does not require joinder of an absent

27  person."); *Blumberg v. Gates*, 203 F.R.D. 444, 447 (C.D. Cal. Oct. 31, 2001) ("[T]he fact that [the

28  defendant] might obtain different results in different cases does not establish a basis for Rule 19

United States District Court
Northern District of California

10

joinder."). Nor would Defendants be subject to inconsistent obligations if Mouawad was not joined in this action. "Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 976 (9th Cir. 2008) (quoting *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)). Thus, the "risk that a defendant who has successfully defended against a party may be found liable to another party in a subsequent action arising from the same incident—i.e., a risk of inconsistent adjudications or results—does not necessitate joinder of all of the parties into one action pursuant to Fed. R. Civ. P. 19(a)." *Delgado*, 139 F.3d at 3. If Ikeda were to prevail in this case, Defendants "could conceivably comply with [this Court's] judgment without being forced to breach another court's order regarding any claims brought by [Mouawad]. *Bird*, 2015 WL 1009015, at *4 (citing *Donne v. Hart*, 2011 WL 3925129, at *8 (E.D. Cal. Sept. 7, 2011) ("Even if both Plaintiffs and [absent party] were to prevail against Defendants in separate suits, Defendants' total liability is limited to the . . . loss; a recovery in one suit will be considered by the later suit in determining damage.")).

Accordingly, Mouawad is not a necessary party, and joinder is not required. Because Mouawad is not a party "required to be joined," the Court need not consider whether joinder is feasible.

**B.     Standing**

Defendants next argue that Ikeda's statutory claims should be dismissed under Rule 12(b)(1) because she fails to demonstrate injury in fact. Mot. at 12-13. Specifically, Defendants contend Ikeda "fails completely to allege any actual damages as a result of the various statutory violations of the Defendants," and the FAC should therefore be dismissed on this basis for lack of standing. *Id.* at 13.

Because questions of Article III standing go to a federal court's subject-matter jurisdiction, an argument that a party lacks standing is "properly raised in a motion to dismiss under Federal

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Rule of Civil Procedure 12(b)(1)."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *see also*

2   *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (where plaintiffs lack standing, a

3   suit should be dismissed under Rule 12(b)(1)).  Article III standing requires that the plaintiff "(1)

4   suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant,

5   and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136

6   S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016).  "The party invoking federal jurisdiction

7   bears the burden of establishing these elements."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561

8   (1992).

9        Here, Ikeda alleges the following injuries directly caused by Defendants' loan servicing

10  errors and related improprieties:

11       • The amounts (more than $95,000) that Ikeda was required to pay SFFCU in excess

12          of the amount actually owed on the loan in order to close the sale of the property in

13          December 2019, plus pre-judgment interest on those amounts;

14       • Improper charges assessed against her by Defendants, including late charges,

15          excess interest charges, and charges for force-placed insurance; and

16       • Damage to her credit that resulted when Defendants falsely reported to the credit

17          agencies that Ikeda had failed to make timely loan payments, which resulted in

18          Ikeda being unable to obtain financing for a new home.

19  FAC ¶¶ 40, 46, 51-52, 57, 64.  A "quintessential injury-in-fact" occurs when the "plaintiffs spent

20  money that, absent defendants' actions, they would not have spent."  *Maya v. Centex Corp.*, 658

21  F.3d 1060, 1069 (9th Cir. 2011).  Thus, because Ikeda alleges she is out of pocket in excess of

22  $95,000 as the direct result of Defendants' actions, the Court finds she has established standing.

23  **C.     Rule 12(b)(6)**

24       **1.     Legal Standard**

25       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

26  sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff

27  can prove no set of facts in support of his claim which would entitle him to relief."  *Cook v.*

28  *Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8

United States District Court
Northern District of California

provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted).  However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### 2.    Rule 8

Defendants first argue Ikeda's entire FAC must be dismissed because it does not meet the minimum pleading requirements of Rule 8.  Mot. at 15.  They argue Ikeda fails to support "the various conclusory assertions" in her FAC.  *Id.*  However, as detailed in the background section above, the FAC contains enough facts to state a claim to relief that is plausible on its face, and Ikeda provides fair notice of her claims.

United States District Court
Northern District of California

1    Defendants also argue dismissal is appropriate under Rule 8 because "all but one claim is

2    alleged against 'all defendants' and at various points merely referred to as 'Defendants.'"  *Id.* at

3    16.  In response, Ikeda argues that, because Cenlar and SFFCU were in many instances

4    indistinguishable to her, collective allegations are sometimes necessary.  Opp'n at 11.  She

5    concedes "that the FAC sometimes refers to 'SFFCU/Cenlar' or 'Defendants,'" but notes she also

6    alleges that she never received notice that SFFCU had assigned the loan to Cenlar for servicing,

7    and that "SFFCU and Cenlar perpetuated the deliberate, knowing fiction that the loan was still

8    being serviced by SFFCU."  *Id.*; FAC ¶ 13.  She also notes her allegations that even after the loan

9    was assigned to Cenlar, the loan statements she received still bore SFFCU's name and logo, and

10   that when she called SFFCU seeking an explanation for allegedly past due amounts and higher

11   monthly payments, these calls were, unbeknownst to her, routed to Cenlar.  Opp'n at 11 (citing

12   FAC ¶¶ 14-15).

13   It is true that Rule 8 does not permit the undifferentiated lumping together of defendants.

14   *See, e.g. In re Sagent Tech., Inc., Derivative Litig.*, 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003)

15   ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual

16   defendant or defendants were responsible for which alleged wrongful act."); *Hassay v. VA Health*

17   *Care San Francisco*, 2018 WL 4676955, at *3 (N.D. Cal. Sept. 26, 2018) ("Plaintiff must also

18   explain why each named defendant is being sued by making specific factual allegations that

19   connect each defendant with the alleged wrongdoing, and specifically identifying the claim(s)

20   asserted against each defendant."); *Newman v. OneWest Bank, FSB*, 2010 WL 797188, *5 (C.D.

21   Cal. Mar. 5, 2010) ("Plaintiffs' allegations fail to meet the basic pleading requirements of Rule

22   8(a) because they lump all of the defendants together.").  However, Ikeda has alleged that

23   Defendants deliberately obfuscated their respective responsibilities and, as a result, much of the

24   time she had no idea whether SFFCU or Cenlar was responsible for a particular servicing error, or

25   even which party she was communicating with.  That said, to the extent information concerning

26   the two defendants' separate roles was available to her, Ikeda's pleading identifies the responsible

27   party.  For example, the FAC alleges that SFFCU originated the loan.  FAC ¶ 12.  It also

28   references Cenlar's internal records, which identify Cenlar's misapplications of funds as

14

"PROCESSOR ERROR," and identifies Cenlar as the party that retained one such misapplied payment in the amount of $15,440.33, failing to refund it until six months after the loan had been paid in full. *Id.* ¶ 26. The FAC specifically alleges Ikeda sent the QWRs to both defendants, and even states the addresses to which each was sent. *Id.* ¶¶ 21-22, 28-29. She alleges a request for a payoff demand statement was made to SFFCU in November 2019, SFFCU provided a written payoff demand in response on December 11, 2019, and that she "advised SFFCU by email that the Payoff Demand was 'materially incorrect' and failed to account for in excess of $95,000 in payments that had been made to SFFCU. *Id.* ¶¶ 31-33. By contrast, in *In re Sagent Technology, Inc., Derivative Litigation* (cited by Defendants), the plaintiff lumped together thirteen separate individuals under the collective label "Defendants." The court properly held that plaintiff's pleading did not place the individual defendants – only three of whom had been with the company for the entire period of the events alleged in the complaint – on fair notice of the claims against each of them. *In re Sagent Tech., Inc.*, 278 F. Supp. 2d at 1094-95.

In sum, Ikeda's FAC reflects a good faith effort to identify the responsible party in those circumstances where that information is currently available to her. The Court finds Defendants have been placed on notice of the nature of her claims against each of them and the grounds on which those claims rest. Nothing more is required at the pleading stage.

### 3. RESPA

#### a. Statutory Background

Ikeda's first cause of action is for violation of RESPA, which outlines specific notice requirements for the servicing of mortgage loans and administration of escrow accounts. *See* 12 U.S.C. § 2605. Under the Act, if a borrower sends the servicer a QWR (sometimes referred to as a notice of error ("NOE")), the servicer must respond in accordance with the statute and accompanying regulations. A QWR is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the

1    borrower." *Id.* § 2605(e)(1)(B).

2          A loan servicer must acknowledge receipt of a request from a borrower within five days

3    (excluding weekends and legal public holidays).  12 C.F.R. § 1024.35(d).  In the absence of

4    several exceptions, the servicer must respond to the notice of error within 30 days by either:

> (A) Correcting the error or errors identified by the borrower and
> providing the borrower with a written notification of the correction,
> the effective date of the correction, and contact information, including
> a telephone number, for further assistance; or
>
> (B) Conducting a reasonable investigation and providing the
> borrower with a written notification that includes a statement that the
> servicer has determined that no error occurred, a statement of the
> reason or reasons for this determination, a statement of the borrower's
> right to request documents relied upon by the servicer in reaching its
> determination, information regarding how the borrower can request
> such documents, and contact information, including a telephone
> number, for further assistance.

12   12 C.F.R. § 1024.35(e)(1)(i).  Under section 1024.35(g), a servicer need not respond to a notice of

13   error if "[t]he asserted error is substantially the same as an error previously asserted by the

14   borrower for which the servicer has previously complied with its obligation to respond . . ., unless

15   the borrower provides new and material information to support the asserted error."  *Id.* §

16   1024.35(g)(1)(i).  If the servicer determines that it is not required to respond to the request because

17   it is "substantially the same" as an error previously reported, it must "notify the borrower of its

18   determination in writing not later than five days (excluding legal public holidays, Saturdays, and

19   Sundays) after making such determination."  *Id.* § 1024.35(g)(2).

20         "'To state a viable claim under § 2605(e), a plaintiff must allege: (1) facts giving rise to an

21   inference that the servicer of a mortgage loan received a QWR, including the identity of the

22   purported recipient; (2) facts showing that the QWR contained information enabling the servicer

23   to identify the name and account of the borrower; (3) facts revealing that the QWR included a

24   statement as to why plaintiff believed the account was in error or that provided sufficient detail

25   regarding the other information he sought; (4) facts demonstrating that the QWR addressed the

26   'servicing' of plaintiffs' loan as that term is defined by statute, rather than the validity of the loan

27   or other legal issues; and (5) facts indicating either that plaintiff suffered actual damage as a result

28   of defendant's failure to respond to his inquiries regarding the servicing of the loan or that a

pattern or practice of noncompliance exists entitling plaintiff to statutory damages.'" *Sandigo v. Ocwen Loan Servicing, LLC*, 2019 WL 2233051, at *28 (N.D. Cal. May 23, 2019) (quoting *Grigoryan v. Bank of Am. Corp.*, 2012 WL 10423215, at *4 (C.D. Cal. Dec. 31, 2012)).

### b.    Ikeda's Allegations

Ikeda alleges Defendants violated RESPA in five ways:

> (a) Defendants failed to take timely action to respond and take action with respect to Plaintiff's numerous Qualified Written Requests, in violation of 12 U.S.C. § 2605(e)(1)-(2).
>
> (b) Defendants failed to take timely action to respond to Plaintiff's numerous requests that Defendants correct their errors relating to allocation and crediting of Plaintiff's payments and other standard servicer duties, in violation of 12 U.S.C. § 2605(k)(1)(C).
>
> (c) Defendants made reports to consumer credit reporting agencies concerning allegedly overdue payments which were the subject of Plaintiff's Qualified Written Requests within the 60-day period beginning on the date of Defendants' receipt of those Qualified Written Requests, in violation of 12 U.S.C. § 2605(e)(3).
>
> (d) Defendant Cenlar failed to provide timely notice of the assignment, sale, or transfer of the servicing of the Loan, in violation of 12 U.S.C. § 2605(c)(1).
>
> (e) Defendants wrongfully assessed charges to Plaintiff for "force-placed insurance" covering the Property, in violation of 12 CFR § 1024.37.

FAC ¶ 39.  Defendants raise several arguments regarding the sufficiency of Ikeda's allegations, which the Court shall consider in turn.

### c.    Damages

Defendants first argue Ikeda fails to plead how the violations caused any actual damages to her.  Mot. at 17.

RESPA requires servicers of a federally related mortgage loans to provide timely written responses to inquiries from their borrowers regarding the servicing of their loans.  12 U.S.C. § 2605(e)(1)(A), (e)(2).  Section 2605 requires servicers to "either provide the information to the borrower or explain why such information is not available."  *Id.* § 2605(e)(2).  A plaintiff who alleges a violation of section 2605 must also allege actual pecuniary damages.  *Tamburri v. Suntrust Mortg. Inc.*, 875 F. Supp. 2d 1009, 1014 (N.D. Cal. 2012).  Specifically, the plaintiff

United States District Court
Northern District of California

must allege a causal connection between the RESPA violation and the pecuniary damages.  *See id.* at 1015; *Guidi v. Paul Fin., LLC*, 2014 WL 60253, at *4 (N.D. Cal. Jan. 7, 2014).  A borrower who proves these elements is entitled to recover the actual damages and, if there is a "pattern or practice of noncompliance," statutory damages of up to $2,000.  12 U.S.C. § 2605(f).

Ikeda alleges Defendants made multiple loan servicing errors, provided her with inaccurate information, failed to properly credit payments to her loan, assessed improper late charges, penalties and interest, and failed to timely respond to her QWRs or correct servicing errors, all of which culminated in SFFCU providing a payoff demand on December 13, 2019, which overstated the amount owed by more than $95,000.  Ikeda then paid the full amount demanded, under protest and expressly reserving the right to sue to recover the overpayment.  Ikeda also alleges that Defendants' inaccurate credit reporting – including reporting during the 60-day period following their receipt of her QWRs – resulted in her being unable to obtain financing for a new home.  Based on these allegations, the Court finds Ikeda has plausibly alleged "concrete harm caused by the RESPA violation itself." *Tamburri*, 875 F. Supp. 2d at 1014 (distinguishing cases involving actual harm from those involving "harm generally resulting from a plaintiff's default and foreclosure process").  "[C]ourts in the Ninth Circuit have interpreted the pecuniary loss requirement liberally[.]" *Phillips v. Bank of Am. Corp.*, 2011 WL 4844274, at *5 (N.D. Cal. Oct. 11, 2011); *Johnson v. HSBC Bank USA, Nat. Ass'n*, 2012 WL 928433, at *6 (S.D. Cal. Mar. 19, 2012) ("While Plaintiff does not provide substantial factual support, the allegations are sufficient to state a claim at the pleading stage—Plaintiff has specifically alleged that he sought certain information, BOA denied him his statutorily required information, and the failure to receive that information caused him to pay more than was necessary on his loan and to incur costs in repairing his credit."); *Agredano v. Capital One, Nat'l Ass'n*, 2019 WL 3207765, at *2 (N.D. Cal. Jul. 16, 2019) ("it is plausible that Real Time's 'fail[ure] to provide an accounting to justify the balance it claims [it] is owed' caused the alleged damages.  For example, had Real Time timely and adequately responded to plaintiff's QWR, plaintiff could have taken additional steps to correct any inaccuracies, thereby preventing Real Time from reporting allegedly incorrect information to credit bureaus."); *Johnson*, 2012 WL 928433, at *6 (plaintiff's allegations that servicer failed to

properly credit payments, incorrectly calculated interest, and failed to provide a substantive response to plaintiff's QWR sufficed to state RESPA claim).  Ikeda's allegations are also sufficient to establish a pattern or practice of noncompliance.  *See Laine v. Wells Fargo Bank, N.A.*, 2014 WL 793546, at *5 (N.D. Cal. Feb. 26, 2014); *Grigoryan*, 2012 WL 10423215, at *6 (plaintiff can establish pattern or practice of noncompliance by alleging repeated failures to respond to notices and QWRs).

Accordingly, the Court finds Ikeda's allegations are sufficient to state a claim.

### d.      Notice of Error

Ikeda alleges Defendants "failed to take timely action to respond to Plaintiff's numerous requests that Defendants correct their errors relating to allocation and crediting of Plaintiff's payments and other standard servicer duties, in violation of 12 U.S.C. § 2605(k)(1)(C)."  FAC ¶ 39(b).  Defendants argue Ikeda's requests do not provide the requisite detail under the statute.  Mot. at 17-18.  They contend Ikeda "summarily alleges that the NOE raised an issue as to conflicting figures in the life of the loan history but fails to assert specific facts as to the conflicting figures, " and that "[b]oth QWRs essentially request a detailed accounting of the Loan history, but they do not include any content that could plausibly be considered a Notice of Error.  Indeed, the only allegation in the FAC specifically alleging Plaintiff claimed an error is at Paragraph 33, where Plaintiff alleges her attorney advised SFFCU that a Payoff Demand failed to account for more than $95,000.00 in payments."  *Id.* at 18.  The Court disagrees.

Although Defendants contend the FAC is inadequate based on Ikeda's failure to "allege facts of when the letter was sent, to whom it was directed, why it was sent, and the contents of the letter," Mot. at 18, a review of the FAC shows that it alleges all of these facts in detail, and even appends copies of the QWRs exhibits.  *See* FAC ¶¶ 21-22 & Ex. A; *id.* ¶¶28-29 & Ex. B.  A notice of error[4] is

> any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the

---

[4] As noted above, a QWR is also referred to as a notice of error.  *See Sandigo*, 2019 WL 2233051, at *28.

> error the borrower believes has occurred. . . .  A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request.

12 C.F.R. § 1024.35(a).  Ikeda has adequately pled that her QWRs comply with these requirements.  *See Grigoryan*, 2012 WL 10423215, at *5 ("Contrary to BofA's contentions, Grigoryan has adequately pled that he sent a valid QWR to the bank.  He alleges that he sent BofA 'a letter containing his name, account/mortgage ID number of the loan in question and a statement of reasons why [he] believed the account [was] in error.'  He specifically alleges that the letter 'expressed his concerns regarding . . . how Defendant report[ed] his account to the CRAs . . . with an inaccurate late payment claim for the month of September 2011.'  He also asserts that the letter 'asked for [the] specific loan documents necessary . . . to verify the accuracy of Defendant's late payment claim for the month of September 2011.'  These factual assertions are sufficient to allege that BofA received a QWR that contained information enabling it to identify Grigoryan's name and account, as well as a statement concerning the reasons he believed the account was in error.").

### e.     Causal Connection Between Notice and Resulting Damages

Next, Defendants argue Ikeda's claim under 12 U.S.C. § 2605(c)(1) fails because, to the extent she asserts damages on grounds that there was no notice of servicing transfer, she does not plead a direct connection between the failure to provide notice of transfer and the damages she suffered.  Mot. at 19.  Defendants further argue that, even if Ikeda could prove a violation of section 2605(c)(1), "it is difficult to imagine" how that violation led to any actual damages.  *Id.*

Section 2605(c)(1) provides that "each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer."  Ikeda's FAC details her unsuccessful efforts to obtain accurate information from Defendants beginning in December 2018, and how her difficulties were exacerbated because she was unaware that SFFCU transferred the loan servicing obligation to Cenlar.  Ikeda alleges that, had she been aware that the servicing obligation had been assigned to a third party, and that she was no longer dealing with a local credit union, she could have taken more aggressive action sooner to address Cenlar's ongoing servicing errors.  Based on these

allegations, the Court finds Ikeda has adequately plead a direct causal link between Defendants' maintenance of a "deliberate, knowing fiction that the Loan was still being serviced by SFFCU" (FAC ¶ 13) and the damages she suffered.

### f.    Force-Placed Insurance

Ikeda alleges "Defendants wrongfully assessed charges to Plaintiff for 'force-placed insurance' covering the Property, in violation of 12 C.F.R. § 1024.37[.]"  FAC ¶ 39(e).  She alleges "[t]his made no sense," as she "believed she had maintained the required insurance on the Property."  *Id.* ¶ 20.  Defendants argue "she fails completely to allege any facts that would support a violation of that section.  Without more, Defendants are unable to adequately respond to these allegations."  Mot. at 20.

12 C.F.R. § 1024.37 regulates when a servicer is permitted to obtain a force-placed insurance policy, which is the hazard insurance coverage obtained by the servicer when the borrower fails to maintain or renew such insurance on a property as required by the terms of the loan.  12 U.S.C. § 2605(k)(2).  Under RESPA, servicers are prohibited from obtaining such insurance "unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance."  *Id.* § 2605(k)(1).  The statute further establishes that "a reasonable basis" for force-placed insurance exists only if:

> (A) the servicer has sent, by first-class mail, a written notice to the borrower containing--
>
> (i) a reminder of the borrower's obligation to maintain hazard insurance on the property securing the federally related mortgage;
>
> (ii) a statement that the servicer does not have evidence of insurance coverage of such property;
>
> (iii) a clear and conspicuous statement of the procedures by which the borrower may demonstrate that the borrower already has insurance coverage; and
>
> (iv) a statement that the servicer may obtain such coverage at the borrower's expense if the borrower does not provide such demonstration of the borrower's existing coverage in a timely manner;
>
> (B) the servicer has sent, by first-class mail, a second written notice, at least 30 days after the mailing of the notice under subparagraph (A) that contains all the information described in each clause of such subparagraph; and

United States District Court
Northern District of California

> (C) the servicer has not received from the borrower any demonstration of hazard insurance coverage for the property securing the mortgage by the end of the 15-day period beginning on the date the notice under subparagraph (B) was sent by the servicer.

*Id.* § 2605(l)(1).  Further, servicers are required to terminate a force-placed insurance policy within 15 days of receipt of proof of a borrower's existing coverage and refund to the borrower all force-placed insurance premiums paid and related fees charged during the period of overlapping coverage.  *Id.* § 2605(l)(3)(B).

Accepting Ikeda's factual allegations as true and construing the pleadings in the light most favorable to her, the Court finds she has adequately stated a claim under § 2605(k).  Ikeda alleges she was unaware Defendants purchased force-placed insurance until she reviewed her loan statements and other materials.  FAC ¶ 20.  As part of her first QWR, Ikeda requested Defendants provide details regarding the loan servicer's compliance with RESPA's requirements.  *Id.* ¶ 21.  Ikeda also alleges she maintained the required insurance on the property.  *Id.* ¶ 20.  The Court can reasonably infer from these allegations that Defendants acquired force-placed insurance without first complying with RESPA's notification requirements, and thus had no reasonable basis for believing that Ikeda had not maintained this insurance herself.  *See* 12 U.S.C. § 2605(k)(1); *Hueso v. Select Portfolio Servicing, Inc.*, 2021 WL 1102452, at *9 (S.D. Cal. Mar. 23, 2021) (finding adequate at 12(b)(6) stage plaintiff's allegations that he had not received required notices under RESPA); *In re Llanos*, 609 B.R. 228, 232 (Bankr. C.D. Cal. 2019) (finding allegations that Citi purchased hazard insurance for debtor's property even though debtor already had insurance in place sufficient at the 12(b)(6) stage).  Ikeda also alleges Defendants wrongfully assessed charges for the force-placed insurance and, as part of her first QWR, she requested Defendants "[p]romptly refund all force-placed insurance premium charges and related fees for any period of overlapping insurance coverage[.]"  FAC ¶ 21.  She seeks damages for "[i]mproper charges assessed against Plaintiff by Defendants, including without limitation late charges, excess interest charges, and charges for force-placed insurance[.]"  *Id.* ¶ 40.  From these allegations, the Court finds Ikeda has adequately plead a pecuniary loss flowing from this violation that suffices to state damages.  *See Hueso*, 2021 WL 1102452, at *9; *Craig v. Cap. One, N.A.*, 2018 WL 5857987, at *5 (C.D. Cal.

Apr. 10, 2018) (finding plaintiff's allegation that servicer "failed to refund all force-placed insurance premium charges and related fees" sufficed to state damages resulting from the alleged violation of RESPA's force-placed insurance provision).  Accordingly, dismissal is inappropriate.

### 4.      TILA

Ikeda's second cause of action is for violation of TILA, which Congress passed to promote consumers' "informed use of credit" by requiring "meaningful disclosure of credit terms."  15 U.S.C. § 1601(a); *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 197 (2011)).  Ikeda alleges Defendants failed to credit certain payments on the loan as of the date of receipt, in violation of TILA section 129f, 15 U.S.C. § 1639f.  FAC ¶ 44.

#### a.      Statute of Limitations

Defendants first argue Ikeda's claim is time-barred because she alleges she was notified of her higher monthly payment in December 2018, and she or her attorney contacted either SFFCU or Cenlar on "multiple occasions" between December 2018 and August 2019, yet she filed this case over one year later.  Mot. at 20-21.

An action for damages under TILA must be brought within one year from the alleged violation.  15 U.S.C. § 1640(e).  The statute of limitations period runs from "the date of consummation of the transaction."  *King v. California*, 784 F.2d 910, 913 (9th Cir. 1986).  "Consummation means the time that a consumer becomes contractually obligated on a credit transaction."  12 C.F.R. § 226(a)(13).  Ikeda alleges she was notified of her higher monthly payment in December 2018, yet she did not file this case until November 16, 2020, nearly two years later.  Accordingly, even when the facts are viewed in the light most favorable to her, it is clear that more than one year has passed since her loan transaction was consummated.  However, courts in the Ninth Circuit "apply equitable tolling in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011) (internal quotation marks omitted).  "A district court may grant a motion to dismiss on statute of limitations grounds 'only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'"  *Davenport v. Litton Loan*

*Servicing, LP*, 725 F. Supp. 2d 862, 873 (N.D. Cal. 2010) (quoting *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153 (9th Cir. 2000) (internal quotation marks omitted)).

Ikeda alleges the limitation period was tolled because she "was unable through the exercise of reasonable diligence to discovery [sic] the underlying facts by virtue of the numerous servicing errors committed by Defendants, which made it impossible for Plaintiff to determine whether her payments were being properly credited." FAC ¶ 45. As an example, Ikeda points to her allegation that Cenlar's internal records reveal that her $15,440.33 July payment was never applied to the loan, was retained after the loan was paid off in December 2019, and it was not refunded until June 2020 – five months before this action was filed. Opp'n at 16. As noted above, a TILA claim may be dismissed on statute of limitations grounds "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove the statute was tolled." *Cervantes*, 656 F.3d at 1045. Thus, because Ikeda's allegations would support a finding of equitable tolling, the TILA claim cannot be dismissed on statute of limitations grounds. *See Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006) ("Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue."); *Mazonas v. Nationstar Mortg. LLC*, 2016 WL 2344196, at *5 (N.D. Cal. May 4, 2016) (recognizing that equitable tolling is generally too fact-dependent to grant at the 12(b)(6) stage).

### b.    Private Right of Action Against Cenlar

Defendants argue dismissal is appropriate as to Cenlar because TILA does not create a private right of action against loan servicers. Mot. at 21.

15 U.S.C. § 1639f creates obligations for loan servicers. It states:

> (a) In general
>
> In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, except as required in subsection (b).

United States District Court
Northern District of California

> (b) Exception
>
> If a servicer specifies in writing requirements for the consumer to follow in making payments, but accepts a payment that does not conform to the requirements, the servicer shall credit the payment as of 5 days after receipt.

Section 1639f does not itself create a private right of action. Rather, the provision of TILA that creates a private right of action is section 1640(a), which states, in relevant part: "[A]ny creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person[.]" 15 U.S.C. § 1640(a). The term "creditor"

> refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement[.]

15 U.S.C. § 1602(g). Here, it is undisputed that Cenlar was the loan servicer, not the creditor. FAC ¶ 13. "TILA provides for a private right of action against creditors or lenders, not loan servicers." *Kim v. Shellpoint Partners, LLC*, 2016 WL 1241541, at *6 (S.D. Cal. Mar. 30, 2016) (citing *Gale v. First Franklin Loan Servs.*, 701 F.3d 1240, 1245-46 (9th Cir. 2012)); *see also Meaney v. Nationstar Mortg.*, 2018 WL 1014927, at *8 (D. Md. Feb. 21, 2018); *Iroanyah v. Bank of Am., N.A.*, 851 F. Supp. 2d 1115, 1120 (N.D. Ill. 2012)). As such, this cause of action cannot be maintained against Cenlar and dismissal is appropriate. However, the Court may hold a creditor liable for its servicer's TILA violations. *Consumer Sols. REO, LLC v. Hillery*, 2010 WL 1222739, at *4 (N.D. Cal. Mar. 24, 2010); *Rinegard-Guirma v. Bank of Am. NA*, 2012 WL 1110071, at *9 (D. Or. Apr. 2, 2012). Thus, SFFCU may be held liable for Cenlar's alleged violations.

### c.    Whether Ikeda States a TILA Claim Against SFFCU

Defendants argue that Ikeda's TILA § 1639f claim fails because she does not allege that Cenlar misapplied any full periodic payments. Mot. at 22. "TILA generally requires mortgage servicers to credit payments to consumer accounts 'as of the date of receipt' of payment, unless delayed crediting has no effect on either late fees or consumers' credit reports." *Fridman v. NYCB Mortgage Co., LLC*, 780 F.3d 773, 775 (7th Cir. 2015) (quoting 15 U.S.C. § 1639f(a)).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Ikeda alleges that Defendants failed to timely credit payments to the loan, including a

2    "misapplied payment" in the amount of $15,440.33, initially made in July 2019, which was never

3    applied to the loan, was retained by Defendants after the loan had been fully paid off in December

4    2019, and was not refunded until June 2020.  In response, Defendants argue that Ikeda does not

5    argue they misapplied any full periodic payments, and they are entitled to decline to credit "partial

6    payments" to the loan.  Mot. at 22.

7    TILA's promulgating regulations, found in Regulation Z at 12 C.F.R. § 1026.36, clarifies

8    that the obligation to apply payments as of the date of receipt applies only to "periodic payments"

9    – payments sufficient to cover principal, interest, and escrow due in the billing cycle:

> No servicer shall fail to credit a periodic payment to the consumer's
> loan account as of the date of receipt, except when a delay in crediting
> does not result in any charge to the consumer or in the reporting of
> negative information to a consumer reporting agency, or except as
> provided in paragraph (c)(1)(iii) of this section. A periodic payment,
> as used in this paragraph (c), is an amount sufficient to cover
> principal, interest, and escrow (if applicable) for a given billing cycle.
> A payment qualifies as a periodic payment even if it does not include
> amounts required to cover late fees, other fees, or non-escrow
> payments a servicer has advanced on a consumer's behalf.

16    12 C.F.R. § 1026.36(c)(1)(i).  Regulation Z separately addresses partial payments, providing the

17    servicer may hold them in suspense or unapplied funds until it receives an amount sufficient to

18    satisfy a full periodic payment.  "Any servicer that retains a partial payment, meaning any

19    payment less than a periodic payment, in a suspense or unapplied funds account shall: . . . On

20    accumulation of sufficient funds to cover a periodic payment in any suspense or unapplied funds

21    account, treat such funds as a periodic payment received in accordance with paragraph (c)(1)(i) of

22    this section."  12 C.F.R. § 1026.36(c)(ii)(B).

23    Ikeda does allege Defendants rejected a payment "as an insufficient 'partial payment.'"

24    FAC ¶ 19.  However, she also alleges Defendants misapplied full payments, including one for

25    $15,440.33, and that Cenlar's own records refer to "misapplied payments" constituting

26    "PROCESSOR ERROR."  *Id.*¶ 26.  Thus, while Defendants' rejection of an insufficient partial

27    payment may be proper under Regulation Z, their partial payment defense is at best a factual one,

28    and resolving such factual disputes is not proper at the pleading stage.  Accordingly, Ikeda's TILA

1    claim cannot be dismissed on this ground.

2        **5.    Money Had and Received**

3        In her third cause of action for money had and received, Ikeda alleges she paid monies to

4    SFFCU based on its representations that they were due, but SFFCU overstated the amounts due

5    and/or failed to properly apply the amounts paid to her account.  FAC ¶¶ 50-51.  She alleges

6    SFFCU has no right to retain her payments in excess of what was actually owed, and that despite

7    her demands, SFFCU has not returned the amounts she paid in excess of what was actually owed.

8    *Id.* ¶¶ 52-53.  Defendants argue this claim must be dismissed because it seeks to recover the same

9    payments allegedly overpaid in the remaining claims, and because her other claims fail, so does

10   her claim for money had and received.  Mot. at 23.

11       A cause of action for money had and received "is available in a great variety of situations

12   and 'lies wherever one person has received money which belongs to another, and which in equity

13   and good conscience should be paid over to the latter.'"  *Gutierrez v. Girardi*, 194 Cal. App. 4th

14   925, 937 (2011), *reh'g denied* (May 16, 2011) (quoting *Weiss v. Marcus*, 51 Cal. App.3d 590, 599

15   (1975) (other internal citation omitted)).  "To prove a claim for money had and received, a

16   plaintiff must show all of the following: 1) the defendant 'received money that was intended to be

17   used for the benefit of' the plaintiff; 2) the money 'was not used for' the plaintiff's benefit; and 3)

18   the defendant 'has not given the money to' the plaintiff."  *English & Sons, Inc. v. Straw Hat*

19   *Restaurants, Inc.*, 176 F. Supp. 3d 904, 926 (N.D. Cal. 2016) (quoting Judicial Council of

20   California Civil Jury Instruction 370).  The claim is viable "wherever one person has received

21   money which belongs to another, and which in equity and good conscience should be paid over to

22   the latter."  *Avidor v. Sutter's Place, Inc.*, 212 Cal. App. 4th 1439, 1454 (2013).

23       Money had and received is a common count which, under California law, is not a specific

24   claim but is instead a simplified form of pleading used to aver the existence of monetary

25   indebtedness.  *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004) (citations omitted).

26   "When a common count is used as an alternative way of seeking the same recovery demanded in a

27   specific cause of action, and is based on the same facts, the common count is demurrable if the

28   cause of action is demurrable."  *Id.* at 394 (citations omitted).  Thus, Ikeda's "common count must

United States District Court
Northern District of California

1   stand or fall with" her other causes of action.  *Id.* at 395.  Here, Ikeda has stated viable claims

2   seeking the same recovery as demanded in her alternative money had and received claim, namely

3   the more than $95,000 Defendants demanded and received from her.  Accordingly, because those

4   claims survive, dismissal is inappropriate.

5         **6.**      **Negligence**

6         Ikeda's fourth claim is for negligence, alleging Defendants breached their duty of due care

7   in connection with the administration of the loan, including a duty to provide her with accurate

8   information concerning the amounts owed, to credit her payments properly, and to provide an

9   accurate Payoff Demand Statement under California Civil Code section 2943.  FAC ¶ 55.

10  Defendants argue her claim fails for two reasons: (1) she is unable to establish the existence of a

11  duty of care; and (2) she fails to allege any physical injury.  Mot. at 24-25.

12        As an initial matter, Ikeda concedes these arguments by failing to address them in her

13  opposition.  *See Gordon v. Davenport*, 2009 WL 322891, at *4 n.4 (N.D. Cal. Feb. 9, 2009)

14  ("Indeed, plaintiff does not even address his third cause of action in his opposition brief,

15  suggesting that he concedes defendants' assertion that he fails to state facts giving rise to a claim

16  for relief."), *aff'd sub nom. Gordon v. State Bar of Cal.*, 369 Fed. App'x. 833 (9th Cir. 2010);

17  *Cullen v. Netflix, Inc.*, 600 F. App'x 508, 509 (9th Cir. 2015).  However, even considering

18  Defendants' argument on the merits, the Court finds dismissal is appropriate.

19        Under California law, the elements of a claim for negligence are that: (1) defendant had a

20  legal duty to plaintiff, (2) defendant breached this duty, (3) defendant was the proximate and legal

21  cause of plaintiff's injury, and (4) plaintiff suffered damage.  Cal. Civ. Code § 1714; *Merrill v.

22  Navegar, Inc.*, 26 Cal. 4th 465, 500 (2001).

23        "[A]s a general rule, a financial institution owes no duty of care to a borrower when the

24  institution's involvement in the loan transaction does not exceed the scope of its conventional role

25  as a mere lender of money."  *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089,

26  1096 (1991) (lender acting within the scope of its conventional activities owed no duty of care to

27  the borrower in preparing an appraisal of the security for the loan).  Still, "*Nymark* does not

28  support the sweeping conclusion that a lender never owes a duty of care to a borrower."  *Alvarez v.*

*BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014).  A duty may arise even where the lender remains within its "conventional role" of merely loaning money.  *Id.*  For example, in *Alvarez*, the court held that in light of California's Homeowner Bill of Rights, once a lender undertakes to consider a loan-modification request, it owes the borrower a duty to use reasonable care in handling that request.  *Id.* at 945-52.  Thus, liability to a borrower for negligence may arise under special circumstances, such as "when the lender actively participates in the financed enterprise beyond the domain of the usual money lender."  *Nymark*, 231 Cal. App. 3d at 1096 (quotations omitted); *Resolution Trust Corp. v. BVS Dev., Inc.*, 42 F.3d 1206, 1214 (9th Cir. 1994) ("Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, excepting those imposed due to special circumstance or a finding that a joint venture exists.") (citing *Nymark*).  The test for determining whether a financial institution owes a duty of care to a borrower-client "involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm."  *Nymark*, 231 Cal. App .3d at 1098 (quotations omitted).

Here, Ikeda pleads no facts showing Defendants exceeded their conventional roles. Instead, her negligence claim is based entirely "in connection with the administration of the Loan, including a duty to provide her with accurate information concerning the amounts owed, to credit her payments properly, and to provide an accurate Payoff Demand Statement under California Civil Code section 2943."  FAC ¶ 55.  These allegations are about Defendants acting in their capacities as a conventional lender and servicer and thus do not plausibly plead a duty of care. *Nymark*, 231 Cal. App. 3d at 1095-96; *Chie v. Citigroup, Inc.*, 2021 WL 633868, at *5 (N.D. Cal. Feb. 18, 2021) (dismissing negligence claim where plaintiffs alleged "Defendants as the bank and servicer of the [home-equity line of credit], had a duty to Plaintiffs, among other things, [to] account for and credit or refund funds that were sent to Defendants," finding such allegations "are about Citi's acting in its capacity as a conventional lender and thus do not plausibly plead a duty

United States District Court
Northern District of California

of care); *Milyakov v. Quality Loan Serv. Corp.*, 2018 WL 732500, at *4 (N.D. Cal. Feb. 6, 2018) (dismissing negligence claim against loan servicers because "[t]he complaint does not allege that defendants took any action toward plaintiffs outside of a traditional money lending activity"); *Gosal v. Wells Fargo Bank, N.A.*, 2018 WL 2984875, at *5 (E.D. Cal. June 14, 2018) (no plausible negligence claim where the "complaint states only that defendant was negligent in 'failing to properly and accurately credit payments toward the loan, preparing and filing false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so.' Plaintiff . . . fails to satisfy the duty element of her negligence claim") (simplified), *report and recommendation adopted*, 2018 WL 4773350 (E.D. Cal. Aug. 15, 2018). Accordingly, dismissal is appropriate.

7.    **UCL**

In her fifth claim, Ikeda alleges Defendants have engaged in unlawful, unfair, and fraudulent business practices in violation of the UCL. FAC ¶ 59. Defendants argue her claim fails under all three prongs. Mot. at 25-27.

California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. "Since section 17200 is [written] in the disjunctive, it establishes three separate types of unfair competition. The statute prohibits practices that are either 'unfair' or 'unlawful,' or 'fraudulent.'" *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003) (quotation omitted); *see also CelTech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

To support a claim for a violation of the UCL, a plaintiff cannot simply rely on general common law principles. *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004). A party may bring a section 17200 claim only if she shows she "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To have standing, a plaintiff must sufficiently allege that (1) she has "lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution" and (2) there is a "causal connection" between the defendant's alleged UCL violation and the plaintiff's injury in fact. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-

04 (9th Cir. 2010) (citations omitted).

In her opposition, Ikeda only addresses the unlawful prong. Opp'n at 17. As such, she concedes Defendants' arguments as to the unfair and fraudulent prongs. *See Gordon*, 2009 WL 322891, at *4 n.4; *Cullen*, 600 F. App'x at 509.

Defendants argue Ikeda's claim under the UCL's unlawful prong fails because it is derivative of her other claims. Mot. at 26. The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Violation of almost any federal, state, or local law may serve as the basis for a UCL claim. *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838–39 (1994). As discussed above, Ikeda has plead viable RESPA and TILA claims; thus, she has also stated a valid claim under the UCL. *See Plascencia v. Lending 1st Mortg.*, 583 F. Supp. 2d 1090, 1098 (N.D. Cal. 2008) (holding TILA violation actionable under section 17200); *Dowling v. Bank of America Nat'l Ass'n*, 2015 WL 3454563, *10 (E.D. Cal. May 29, 2015) (plaintiff's allegations that lender failed to credit payments against loan stated claim for UCL violation). Accordingly, dismissal is inappropriate.

### 8.    CCRAA

In her sixth cause of action for violation of California's Consumer Credit Reporting Agencies Act, Ikeda alleges Cenlar, acting as SFFCU's agent, reported (on a continuous and ongoing basis) that she had failed to make timely payments on the loan. FAC ¶ 62. She further alleges she had, in fact, promptly tendered all sums she was told were necessary to remain current on the loan, and that on multiple occasions, Defendants failed to properly apply her loan payments. *Id.* ¶ 63. As a result, Ikeda alleges she suffered damage to her credit, including being unable to obtain financing to purchase a new home, and compensatory damages. *Id.* ¶ 64. Defendants argue this claim fails because Ikeda does not allege they furnished information on a specific transaction or experience to any consumer credit reporting agency at a time it knew or should have known the information was incomplete or inaccurate. Mot. at 27-28.

California Civil Code section 1785.25(a) provides: "A person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person

knows or should know the information is incomplete or inaccurate."[5]  "The cause of action is provided only for the 'furnishing' of incorrect information; a plaintiff cannot assert under this section a claim that a furnisher had a duty to investigate or correct disputed reports."  *Woods v. Experian Info. Sols., Inc.*, 2010 WL 11636221, at *3 (N.D. Cal. Oct. 5, 2010) (citing *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1148 (N.D. Cal. 2010) ("[T]he general obligation in section 1785.25(a) not to furnish CRAs with incomplete or inaccurate information cannot have been intended to include the obligation to notify CRAs of disputed debts.")).

Here, Ikeda alleges Defendants committed willful violations of section 1785.25 by falsely reporting to consumer credit reporting agencies "that Plaintiff had failed to make timely payments under the Loan," and that this false derogatory reporting "prevented her from obtaining financing to purchase a new home."  FAC ¶¶ 64-65.  The Court finds these allegations state a claim for violation of the CCRAA.  *See Kuns v. Ocwen Loan Servicing., LLC*, 611 Fed. App'x 398, 400 (9th Cir. 2015) ("Kuns's allegation that Ocwen's reporting was "incomplete or inaccurate" regarding his personal liability for the foreclosure deficiency stated a claim under CCRAA § 1785.25"); *Huizar v. Wells Fargo Bank, N.A.*, 257 F. Supp. 3d 1103, 1108-09 (E.D. Cal. 2017) (plaintiff stated a claim under section 1785.25 by alleging defendant provided information to credit reporting agents that it knew or should have known was incomplete or inaccurate).  Accordingly, dismissal is inappropriate.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' motion to dismiss Ikeda's TILA claim against Cenlar, her negligence claim against both Defendants, and her UCL claims against both Defendants under the unfair and fraudulent prongs.  The Court **DENIES** Defendants' motion as to all other claims.  If Ikeda chooses, she may file a second amended complaint by November 3, 2021.  No new causes of action or new defendants may be added without leave of

---

[5] The federal Fair Credit Reporting Act preempts any prohibitions "imposed under the laws of any state . . . relating to the responsibilities of persons who furnish information to consumer reporting agencies."  15 U.S.C. § 1681t(b)(1)(F).  However, it expressly saves California Civil Code section 1785.25(a) from preemption.  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir. 2010).  Therefore, a private right of action exists to enforce California Civil Code section 1785.25(a).

United States District Court
Northern District of California

court.  If Ikeda does not file an amended complaint, Defendants shall file their answer by November 17, 2021.

**IT IS SO ORDERED.**

Dated: October 13, 2021

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

33